[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE 
The defendants, the Town of Greenwich, First Selectman John Margenot, Jr., Chief of Police Kenneth J. Moughty, Detective Roger M. Wachnicki, and Detective John J. Campbell, Jr., move to strike all eight counts of the plaintiff's[1] revised complaint. By way of summary, the factual allegations reveal the following. Andrew D. Wilson and the plaintiff's decedent were acquainted through the plaintiff's decedent's son, Dirk Peters. Wilson and Dirk Peters attended high school together. Wilson remained friendly with Dirk Peters and was a frequent visitor to the Peters' home in Greenwich. In 1993, Wilson began to exhibit bizarre behavior manifested by a delusional belief that Dirk Peters, assisted by the plaintiff's decedent Jack Peters, was systematically destroying Wilson's life. Specifically, Wilson believed that Dirk Peters had poisoned him in 1981 with methamphetamine and had hypnotized him in order to obtain control of his thoughts. Wilson believed that Jack Peters, through his workplace, was part of a large organization bent on controlling the minds of others. Wilson further believed that Dirk and Jack Peters were responsible for all the problems in his life including his alcoholism and drug use, the death of Wilson's mother in 1982 of cancer, and the breakup between Wilson and Anne Margenot, a girlfriend of Wilson's back in 1981. Anne Margenot is the daughter of the individual defendant First Selectman John J. Margenot, Jr.
The complaint further alleges in detail, including several attached exhibits, that in the months between April and August of 1993, the Greenwich Police Department, specifically Detectives Wachnicki and Campbell received letters and audio tapes directly from Andrew Wilson relaying the above alleged conduct on the part of Dirk Peters and that Wilson believed the Peters were responsible for many of the misfortunes that had occurred in Wilson's life. Between April and July of 1993, First Selectman John Margenot, Jr., also received audio tapes and letters from Andrew Wilson. Additionally, Andrew Wilson's sister, Julia Wilson, repeatedly contacted the Greenwich Police Department, including a July 19, 1993 facsimile addressed to Chief Moughty advising that, in her opinion, her brother, who was then residing in Nantucket, Massachusetts, was mentally ill and was a threat to himself and to Jack and Dirk Peters. She informed them that he had recently had psychiatric treatment and was found to be paranoid and delusional. She also conveyed that Wilson was planning on returning to Connecticut from Nantucket on July 19, 1993, that he had told members of the Wilson family, including his father, that he wanted to get back to Connecticut to "get on with the retribution," and that Andrew Wilson had stated that "the best therapy CT Page 91 would be to blow Dirk, Jack, and Todd Peters [Dirk's brother] sky high" and that "Dirk and his father should be taken out to the public courtyard and executed." (Complaint ¶ 25.) Julia Wilson requested that the Greenwich Police Department intervene to avoid a crisis. Julia Wilson also conveyed her information regarding her brother to the Peters. Throughout this same period, Andrew Wilson engaged in a course of conduct marked by harassment and threats towards the Peters by contacting Jack and Dirk Peters. These threats consisted of Wilson screaming on the phone at Jack Peters and sending letters with strange, macabre statements. Wilson also called Anne Margenot. who was living in Georgia, to discuss his bizarre accusations against the Peters. Consequently, Anne Margenot changed her telephone number to an unpublished status. Both Dirk and Jack Peters also related this information to the police defendants in late July 1993. As a result, defendant First Selectman John J. Margenot, Jr., advised Dirk Peters that, in his position as Chief Police Commissioner, he would personally get involved and have the police investigate Wilson's harassment and threats.
Andrew Wilson returned to Connecticut on or about July 19, 1993 and shortly thereafter, applied to buy a gun at a gun shop in New Haven. On August 1, 1993, defendant Detective Campbell met with Dirk Peters and advised him that the Greenwich Police Department was unable to do anything about Wilson and that the Peters family could not get a restraining order against Wilson. Detective Campbell assured Dirk Peters that he and his father were in no danger and that they should not worry. Dirk Peters relayed this to his father on the same day. On or about August 3, 1993, Andrew Wilson took possession of the hand gun. On August 5, 1993, Andrew Wilson shot and killed Jack Peters as he was swimming in his pool in the backyard of the Peters' home in Greenwich.
In counts one and two, the plaintiff alleges that each of the individually named defendants[2] were negligent and that their negligent acts and/or omissions were a proximate cause of the death of the plaintiff's decedent. In count five, the plaintiff also alleges the defendants Kenneth Moughty and John J. Margenot, Jr. were negligent for failing to properly supervise, direct and control officers of the Greenwich Police Department. In count seven, the plaintiff alleges that the defendants' actions and/or omissions violated the deceased's right to due process of law under article first, § 8. of the constitution of Connecticut. In counts three, four, six, and eight, the plaintiff incorporates the allegations of negligence asserted against each of the individual defendants, and further claims that the Town of Greenwich is required to indemnify the individual defendants "for their liability to the Plaintiff for damages owing to the Plaintiff' pursuant to General Statutes §§ 7-101a and 7-465. The defendants have filed the current motion to strike all eight counts of the revised complaint. CT Page 92
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). In ruling on a motion to strike, the role of the trial court is "to examine the [complaint], construed in favor of the plaintiffs, to determine whether the plaintiffs have stated a legally sufficient cause of action." Napoletano v. Cigna Healthcare ofConnecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127 (1996). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . .Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted.) Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623,626-27 (2000). When "it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant [is] not required to plead governmental immunity as a special defense and [may] attack the legal sufficiency of the complaint through a motion to strike." Brown v. Branford, 12 Conn. App. 106, 111
n. 3, 529 A.2d 743 (1987). "A motion to strike is the proper vehicle for resolving the issues of whether a cause of action is barred by governmental immunity and whether an exception to governmental immunity is sufficiently pleaded." Matthews v. Sklarz, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 582036 (February 25, 1999, Hennessey, J.), citing Heigl v. Board of Education, 218 Conn. 1,2-3, 587 A.2d 423 (1991); Evon v. Andrews, 211 Conn. 501, 502-04,559 A.2d 1131 (1989).
 I. 
The defendants move to strike the first two[3] negligence counts on the ground that governmental immunity[4] bars the stated cause of action. In particular, the defendants maintain that they are immune from liability for their official, discretionary acts because the facts alleged do not give rise to the "identifiable person-imminent harm" exception to governmental immunity and, that the scenario presented by this case is guarded by the policy behind governmental immunity. In opposition, the plaintiff contends that the specific facts alleged impose a duty[5] on the defendants which they negligently breached by failing to adequately investigate, warn, advise and protect the plaintiff's decedent from Andrew Wilson. The plaintiff argues that the "identifiable person-imminent harm" exception to governmental immunity applies readily to the facts enumerated in the revised complaint.
In deciding whether an action is barred by the doctrine of governmental CT Page 93 immunity, "the court looks to see whether there is a public or private duty alleged by the plaintiff." Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988). "[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance must be a public and not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong and may support an individual action for damages." (Internal quotation marks omitted.) Id., 166. "If a public duty exists, an official can be liable only if the act complained of is a ministerial act, or one of the narrow exceptions to discretionary acts applies." Id., 170.
"[A]lthough the public duty doctrine provides the starting point of the analysis, distinctions between discretionary acts and ministerial actsare often controlling without regard to whether the duty is ascertainedto be public or private." (Emphasis added.) Gordon v. Bridgeport HousingAuthority, supra, 208 Conn. 170. In outlining the scope of governmental immunity, the Connecticut Supreme Court has stated that "municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion."Elliot v. Waterbury, 245 Conn. 385, 411, 715 A.2d 27 (1998). "[A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." (Internal quotation marks omitted.) Id. See also Purzycki v. Fairfield, 244 Conn. 101, 107,708 A.2d 937 (1998). "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . .[M]inisterial acts are performed in a prescribed manner without the exercise of judgement or discretion. . . . (Internal quotation marks omitted.) Id. "[W]here the duty of the public official to act . . . involves the exercise of discretion, the negligent failure to act will not subject the public official to liability unless the duty to act is clear and unequivocal." Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 167.
The Connecticut Supreme Court has held that "the operation of a police department is a discretionary governmental function, and acts or omissions related to police functions ordinarily do not give rise to liability on the part of the municipality or a cause of action in tort against it." Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 180. The Superior Court has consistently held that acts or omissions of police officers in the exercise of their duties are discretionary in nature. SeeGonzalez v. City of Bridgeport, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 253464 (June 3, 1993, Fuller, J.) CT Page 94 (holding that "[t]he investigation of crimes and decisions to make arrests for them is clearly a discretionary rather than a ministerial function."); see also, Shaham v. Wheeler, Superior Court, judicial district of Danbury, Docket No. 321879 (March 12, 1998, Nadeau, J.); Iulov. City of Milford, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 031055 (December 21, 1990, Fuller, J.) (3 Conn. L. Rptr. 65). Consequently, "[h]ow far to investigate a complaint is a matter of police discretion and necessarily so. If the police were to employ exhaustive investigations in every complaint as a bureaucratic technique to avoid all future criticism or liability, the cost in intrusion on civil liberties would be intolerable in free society." Brown v. Dooling, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 032598 (January 23, 1998, Flynn, J.). Moreover, "[s]uits against municipalities or municipal employees raise the same policy considerations since municipalities only act through their employees."Lecy v. City of New London, Superior Court, judicial district of New London, Docket No. 549544 (May 2,. 2000, Corradino, J.) (26 Conn. L. Rptr. 607).
Applying the above stated principles to the present case, counts one and two of the plaintiff's revised complaint allege a duty on the part of the defendants to perform acts involving the exercise of discretion. The inherent governmental functions and duties of a police department are to field and receive complaints and information and then to act with discretion. See Gordon v. Bridgeport Housing Authority, supra,208 Conn. 180. In this instance, after receiving information concerning Andrew Wilson, there was more than one way that the police defendants could react, and how and whether to pursue such information requires some exercise of judgment and discretion. This court finds that the Greenwich Police Department and the individual defendants, in performing police functions and enforcing the law, were carrying out discretionary, governmental functions. Therefore, in order to sustain the legal sufficiency of the first two counts of the plaintiff's complaint, the allegations must fall within one of the recognized exceptions to qualified immunity for discretionary acts.
The courts have recognized three exceptions where an official can be held liable when performing a discretionary act. They are: "first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal officer for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Purzyckiv. Fairfield, 244 Conn. 101, 108. 708 A.2d 937 (1998). The only exception that is relevant to the present case is the first, identifiable CT Page 95 person-imminent harm exception.[6] This court finds that the plaintiff has alleged facts sufficient to invoke the identifiable person-imminent harm exception to governmental immunity, specifically, circumstances which made apparent to a public officer that his failure to act would likely subject an identifiable person to imminent harm.
Several decisions of the Supreme Court shed light on the proper application of the identifiable person-imminent harm exception. See, e.g., Purzycki v. Fairfield, 244 Conn. 101, 708 A.2d 937 (1998), Burnsv. Board of Education, 228 Conn. 640, 638 A.2d 1 (1994); Evon v.Andrews, 211 Conn. 501, 559 A.2d 1131 (1989); Gordon v. BridgeportHousing Authority, 208 Conn. 161, 544 A.2d 1185 (1988); Shore v.Stonington, 187 Conn. 147, 444 A.2d 1379 (1982); Sestito v. Groton,178 Conn. 520, 528, 423 A.2d 165 (1979);[7] See also Colon v. City ofNew Haven, 60 Conn. App. 178, 758 A.2d 900 (2000); Bonamico v.Middletown, 49 Conn. App. 605, 713 A.2d 1291 (1998).
In Sestito v. Groton, 178 Conn. 520, 528, 423 A.2d 165 (1979), the plaintiff sought damages for the fatal shooting of her decedent during a public disturbance or melee in which she alleged that the defendant police officer was negligent in watching the disturbance while failing to do anything to prevent it. Viewing the evidence in the light most favorable to the plaintiff, the Sestito court set aside a directed verdict for the defendants, explaining that the facts regarding governmental immunity should go to a jury where there is "sufficient controversy over whether the defendant . . . owed a duty to the plaintiff's decedent and breached it," regardless of whether the alleged duty arises from statutes, regulations, or the common law. Id., 528. The fact that the plaintiff's decedent was one man among a mob. of men did not compel the court to conclude that he was an insufficiently identifiable victim.
In Shore v. Stonington, 187 Conn. 147, 444 A.2d 1379 (1982), the plaintiff administrator sought damages from the defendant town for the death of his decedent who was killed when her vehicle was struck by another car in which the driver was intoxicated. Approximately one hour before the collision, a town police officer stopped the intoxicated driver and after telling him not to drive, the officer let the driver go. The plaintiff claimed that the officer was negligent in falling to enforce statutory prohibitions concerning reckless and intoxicated driving and that the decedent was an identifiable person subject to imminent harm. The Shore court concluded that the facts presented therein failed to show that the defendant officer could have been aware that the intoxicated driver's conduct threatened an identifiable victim with imminent harm.[8] Id., 153-54. The Shore case turned on the undisputed fact that the victim was not identifiable to the police officer when he stopped the intoxicated driver. CT Page 96
In Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 544 A.2d 1185
(1988), the plaintiff, conservatrix of the estate of her brother, an incapable, sought damages from the defendants, a city, a housing authority and its commissioners, a former mayor, and a chief of police, for injuries suffered in a beating at a housing project. The plaintiff's brother allegedly encountered a group of youths and one youth grabbed his wallet and fled into a housing project. Two other youths allegedly lured the plaintiff's brother inside the project on the pretext that they would help him recover the wallet, then the youths physically beat him to a condition just short of death. The defendants moved to strike various counts of the plaintiff's complaint on the ground that the defendants owed no duty to protect the plaintiff's brother, by application of the doctrine of governmental immunity. In declining to find that the plaintiff's brother was an identifiable person within a foreseeable class of plaintiffs, the Gordon court emphasized that "[a]ccording to the complaint, the police had no knowledge whatsoever of the robbery of [the plaintiff's brother], who made no attempt to notify the police, and who entered the project on his own. The facts of this case do not support the claim that [the plaintiff's brother] was even a remotely foreseeable plaintiff." Gordon v. Bridgeport Housing Authority, 208 Conn. 180. In affirming the granting of the defendants' motion to strike, Gordon held that the defendants had no duty to provide police protection to the plaintiff's brother specifically, as distinguished from its duty to the public generally, because there were no facts alleged supporting the claim that the plaintiff's brother belonged to a foreseeable class of plaintiffs. Id., 180-182.
The facts alleged in the present case, unlike Shore v. Stonington, supra, and Gordon v. Bridgeport Housing Authority, supra, satisfy the threshold requirement of an alleged identifiable victim because the complaint alleges that the plaintiff's decedent, Jack Peters, was identified by name to the defendants prior to the occurrence of the alleged harm. While it is true that Jack Peters was not the only identifiable victim according to the complaint, Jack Peters was clearly identified as a member of a small group of identifiable, potential victims which was limited to Jack, Todd and Dirk Peters. The existence of more than one identifiable victim does not preclude application of the identifiable person-imminent harm exception to governmental immunity. SeeSestito v. Groton, supra, 178 Conn. 520 (plaintiff's decedent shot among mob of men considered sufficiently identifiable victim for purposes of governmental immunity exception); see also Burns v. Board of Education, supra, 228 Conn. 646 ("We have construed [the identifiable person-imminent harm] exception to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims."). The plaintiff's complaint is replete with factual CT Page 97 allegations supporting her claim that Jack Peters was an identifiable victim within a foreseeable class of plaintiffs.
In Burns v. Board of Education, 228 Conn. 640, 638 A.2d 1 (1994), the Supreme Court shed light on what type of fact pattern characterizes "imminency" in the context of the exceptions to governmental immunity. InBurns, the plaintiffs sought to recover from the defendants, a city, its board of education and the superintendent of schools when a student fell during school hours on an icy school courtyard. In reaching the conclusion that governmental immunity was not a defense in the Burns
case, the court considered factors such as "the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves." (Citations omitted.) Id., 647-48. Regarding the imminency of the harm, the court found critical that "this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition . . . and the potential for harm. . . was significant and foreseeable." Id., 650.
In Purzycki v. Fairfield, 244 Conn. 101, 708 A.2d 937 (1998), another case illustrating the imminence requirement, the plaintiffs sought damages from the defendant school principal and board of education for injuries sustained by a student who was tripped by a fellow classmate in an unsupervised hallway during a lunch recess period. The Purzycki court first explained that "[t]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to applicability of the defense . . . [where] resolution of those factual issues is properly left to the jury." Id. 107-108. Because the material facts of thePurzycki case were undisputed, the question before the Purzycki court was deemed to be a question of law. Id., 108 note 4. In finding that the student was subject to imminent harm, the Purzycki court reasoned that the exception to governmental immunity fit the facts of the case since the risk of harm was significant and foreseeable and "involve[d] a limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess. Id., 110.
As highlighted by the Supreme Court's decisions in Burns v. Board ofEducation, supra, and Purzycki v. Fairfield, supra, the test for the imminent harm exception is whether there is "a foreseeably dangerous condition that [is] limited in duration and geographical scope." Purzyckiv. Fairfield, supra, 244 Conn. 110. The plaintiff sufficiently alleges a CT Page 98 dangerous condition, namely, that an identifiable person, the plaintiff's decedent, was being actively threatened and harassed by Andrew Wilson. Moreover, the plaintiff sufficiently alleges that this dangerous condition was foreseeable in that the defendants had specific notice of the threatening behavior and knew or should have known of the continuing threat to the plaintiff's decedent. Finally, the plaintiff sufficiently alleges a foreseeably dangerous condition that was limited in duration, to the period in which Andrew Wilson had returned to Connecticut at the end of July 1993 in order to "get on with the retribution," and limited in geographical scope, to the location of the plaintiff's decedent in relation to the location of Andrew Wilson within Greenwich, Connecticut. Therefore, this court finds that the facts alleged in counts one and two sufficiently allege the imminence requirement[9] of the identifiable person-imminent harm exception.
Viewing the facts alleged in the complaint in the light most favorable to the plaintiff, this court finds that the plaintiff has alleged facts sufficient to invoke an exception to governmental immunity, specifically, that the defendants may have been aware of an identifiable victim who was in imminent danger. Stated differently, the plaintiff alleges in counts one and two of her complaint, facts that would, if proved, establish that it was apparent to the individual defendants that their failure to act would subject an identifiable person, the plaintiff's decedent, to imminent harm by Andrew Wilson. While the issue of governmental immunity may be decided as a matter of law on a motion to strike; Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 170; the determination of whether the defendants' actions did in fact subject an identifiable person to imminent harm is a factual issue to be determined by the trier of fact. See Purzycki v. Fairfield, supra, 244 Conn. 107-108
(resolution of unresolved factual issues material to applicability of qualified immunity defense properly left to jury); see also Pagan v.Anderson, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 388804 (August 22, 1991, Hennessey, J.) (4 Conn. L. Rptr. 428) (motion to strike denied where plaintiff's allegations sufficiently alleged identifiable person-imminent harm exception to governmental immunity because whether defendant's actions actually subjected identifiable person to imminent harm was factual issue to be determined by trier of fact).
Therefore, because the plaintiff has alleged facts sufficient to invoke the identifiable person-imminent harm exception to governmental immunity, the defendants' motion to strike counts one and two of the plaintiff's revised complaint is hereby denied.
The defendants move to strike count five on the around that it fails to state a claim upon which relief can be granted. Count five is directed CT Page 99 only to First Selectman John Margenot, Jr. and Chief of Police Kenneth Moughty and is limited to the alleged negligence of their duty to supervise, direct and control the officers of the Greenwich Police Department. The plaintiff incorporated the detailed factual allegations of count one into count five to form the underlying basis. Both the plaintiff and the defendants reassert the same arguments as in count one with the defendant maintaining protection under discretionary governmental immunity and the plaintiff claiming that Margenot, Jr. and Moughty either owed a private duty or are subject to the identifiable person-imminent harm exception.
Again, in Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180,544 A.2d 1185 (1988), the court pronounced: "The deployment of officers is particularly a governmental function. Considerable latitude must be allowed to [a police chief] in the deployment of his officers, or in enforcing discipline. Indeed, because a police chief's authority to assign his officers to particular duties is deemed a matter that concerns the public safety, he may not be deprived of his power to exercise his own discretion and judgment as to the number, qualifications and identity of officers needed for particular situations at any given time. . . .We conclude that the general deployment of police officers is a discretionary governmental action as a matter of law." (Citations omitted; internal quotation marks omitted.)
The Superior Court has steadily followed this principle, specifically in motions to strike against allegations of negligent supervision of police. See Coletosh v. City of Hartford, Superior Court, judicial district of Hartford at Hartford, Docket No. 573462 (April 13, 1999,Wagner, T.J.R.) (24 Conn.L.Rptr. 399) (negligent failure to instruct, supervise, control and discipline officers are governmental acts as a matter of law); Hubbard v. City of New Britain, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 469204 (January 30, 1996, Arena, J.) (granting motion to strike complaint alleging negligent training of police officer regarding high speed chases because such action is discretionary and protected by governmental immunity); Doe v. Nunes, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463832 (April 15, 1995,Handy, J.) (granting motion to strike complaint alleging negligent hiring, supervising and firing of officer because such actions are discretionary duties protected by governmental immunity); Cook v. City ofHartford, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 362482 (August 21, 1992, Aurigemma, J.) (7 C.S.C.R. 1096, 1097) ("The act of training and supervising police officers is clearly a discretionary governmental function. Consideration of who to hire, how to train such people, and how to supervise police officers on the job are decisions requiring the use of judgment and discretion."); CT Page 100Brimage v. Willis, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 438572 (June 18, 1991, Aronson, J.) (6 C.S.C.R. 682) (same).
Here, count five is comprised of the subordinate facts from count one and defendants Margenot, Jr. and Moughty are subject to the same governmental immunity analysis that was conducted for purposes of counts one and two. Thus, this court finds that the defendants named in count five were performing discretionary acts and are immune from negligence liability unless an exception from such immunity applies. See Gordon v.Bridgeport Housing Authority, supra, 208 Conn. 161, 180-83 (recognizing potential applicability of identifiable person-imminent harm exception to governmental immunity for discretionary, supervisory acts of police officials where appropriate facts are alleged): Pagan v. Anderson, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 388804 (August 22, 199 1, Hennessey, J.) (4 Conn.L.Rptr. 428) (stating: "[t]he use of police officers to serve arrest warrants is encompassed within the term "general deployment of police officers, ' which was found to be a discretionary governmental action as a matter of law in Gordon [v. Bridgeport Housing Authority, supra]. The plaintiff has sufficiently alleged an exception to the rule of immunity that the defendants' actions subjected an identifiable person . . . to imminent harm. . . .Accordingly, the defendants' motion to strike is denied."); see also Gervais v. West Hartford Board of Education, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 555396 (July, 25, 1996, Lavine, J.) (17 Conn.L.Rptr. 383) (decisions regarding hiring, training and supervision of employees are discretionary but governmental immunity is not applicable because of imminent harm exception); Clarke v. Fountain, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 468877 (October 12, 1995, Handy, J.) (governmental immunity for discretionary acts inapplicable where plaintiff sufficiently alleges that defendant's negligent supervision subjected identifiable person to imminent harm). As a result, and utilizing the facts of the revised complaint, the plaintiff has pled sufficient facts to allege that it was apparent to these two supervising defendants that the plaintiff's decedent was an identifiable person subject to imminent harm. Therefore, the plaintiff has sufficiently alleged an exception to governmental immunity for discretionary acts and, accordingly, the defendants' motion to strike count five of the plaintiff's revised complaint is hereby denied.
 II.
The defendants move to strike count seven on the ground that it fails to state a claim upon which relief may be granted. Count seven alleges that the individually named defendants[10] actions and/or omissions CT Page 101 violated the deceased's right to due process of law under article first, § 8, of Connecticut's constitution.[11] The defendants argue that neither the Connecticut legislature nor the Connecticut Supreme Court has authorized a cause of action permitting relief in the form of monetary damages for alleged violations of this constitutional right, and that therefore, a purported cause of action based on the due process clause of the state constitution does not lie. The defendants primarily rely onKelley Property Development, Inc. v. Lebanon, 226 Conn. 314, 627 A.2d 909
(1993), arguing that this decision declining to recognize a cause of action under article first, § 8, of the Connecticut constitution controls the present case. The plaintiff cites Binette v. Sabo,244 Conn. 23, 710 A.2d 688 (1998), arguing that this court has the power to create such a cause of action.
In Binette, the court recognized a private cause of action for money damages for violations of article first, sections seven and nine of the state constitution based on an alleged unreasonable search and seizure and unlawful arrest by defendant municipal police officers. See Binettev. Sabo, supra, 244 Conn. 49-50. The Binette court relied on Bivens v.Six Unknown Named Agents of Federal Bureau of Narcotics, 403 u.s. 388,91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which the United States Supreme Court concluded that federal courts possess the power to create a private cause of action for money damages directly under the federal constitution. See Binette v. Sabo, supra, 244 Conn. 33. The Binette court "emphasize[d] that our decision to recognize a Bivens-type remedy in thiscase does not mean that a constitutional cause of action exists for every violation of our state constitution. (Emphasis added.) Id., 47. Accordingly, the Binette court held that "[w]hether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis. . . . [T]hat determination will be based on a multifactor analysis. The factors to be considered include: the nature of the constitutional provisions at issue; the nature of the purported unconstitutional conduct; the nature of the harm; separation of powers considerations and the other factors articulated in Bivens [supra, "403 U.S. 3961 and its progeny; theconcerns expressed in Kelley Property Development, Inc. [supra,226 Conn. 314]; and any other pertinent factors brought to light by future litigation." (Emphasis added.) Binette v. Sabo, supra, 244 Conn. 48. Thus, Binette instructs this court to consider the concerns expressed by the United States Supreme Court in Bivens and its progeny, and reaffirms the concerns expressed by the Connecticut Supreme Court in Kelly.
Subsequent to its decision in Bivens, the United States Supreme Court explained that it "implied a cause of action against federal officials inBivens, in part, because a direct action against the Government was not available. . . .[T]he purpose of Bivens is to deter the officer." CT Page 102 (Emphasis in original.) Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471,485, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Furthermore, the United States Supreme Court has "responded cautiously to suggestions thatBivens remedies be extended into new contexts." (Citations omitted; internal quotation marks omitted.) Id., 484.
In Kelley, die Connecticut Supreme Court declined to recognize a cause of action under article first, § 8, of the Connecticut constitution for damages for violations of state due process rights by state or local governmental officials. Kelley Property Development, Inc. v. Lebanon, supra, 226 Conn. 314. In addition, no appellate court in Connecticut has recognized a cause of action under article first, § 8, of the state constitution. See id., 330-31. The Kelly the court explained that "[t]he several sister jurisdictions that have addressed the issue of whether to recognize a state Bivens action have pursued varying methods of analysis, with varying results. In a significant number of cases, however, the focus has been on the presence or absence of an existing alternative remedy, either by way of statute or under the common law, to provide some measure of relief for the injured party." Id., 338. "Our examination of these cases leads us to conclude that, as a general matter, we should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy. This conclusion accords with the constitutional principle of separation ofpowers and its requirement for judicial deference to legislative resolution of conflicting considerations of public policy." (Emphasis added.) Id., 339.
Recent decisions by Connecticut's Supreme and Superior Courts have similarly continued the refusal to recognize a private cause of action for damages pursuant to article first, § 8, of the Connecticut constitution, granting a motion to strike such allegations. See ATCPartnership v. Town of Windham, 251 Conn. 597, 612-17, 741 A.2d 305
(1999), cert. denied, 120 S.Ct. 2217, 147 L.Ed.2d 249 (2000) (trial court correctly determined allegations in plaintiff's complaint were insufficient to state a cause of action under due process clause of state constitution; remedies afforded plaintiff by statutory and common law were sufficiently compensatory to obviate need for judicial recognition of freestanding tort claim under article first, § 8, of Connecticut's constitution); Bazzano v. City of Hartford, Superior Court. judicial district of Hartford at Hartford, Docket No. 584611 (November 17, 1999,Peck, J.) (granting police defendant's motion to strike plaintiff's claim under article first, § 8, of Connecticut's constitution).
Applied here, the plaintiff has not alleged facts sufficient to be recognized as a claim for which relief can be granted. As discussed CT Page 103 throughout this decision, the plaintiff has available common law and statutory avenues with which to seek adequate redress. Moreover, this court will not overstep its bounds, legislate, and create a new cause of action under article first, § 8, of the Connecticut constitution, thereby traversing the separation of powers doctrine. The weight of authority runs contrary to such a step. Therefore, the defendants' motion to strike count seven of the plaintiff's revised complaint is hereby granted.
 III. 
The defendants move to strike counts three, four, six and eight of the plaintiff's revised complaint on the ground that they do not state claims upon which relief may be granted. The basis for all four counts is an indemnity claim against the Town of Greenwich pursuant to both General Statutes §§ 7-465[12] and 7-101a.[13] All four counts plead the underpinning facts by incorporation. Count three's indemnity claim is against all the individual defendants as a result of their alleged negligence while in the scope of their employment. Count four is simply a composite of counts one, two and three. Count six's indemnity claim is based on the alleged negligent supervision theory stated in count five against defendants First Selectman John Margenot, Jr. and Chief of Police Kenneth Moughty. Count eight's indemnity claim is based on the constitutional cause of action asserted in count seven under article first, § 8, of the Connecticut constitution. The defendants maintain that an action under § 7-465 must be derived from a valid underlying claim against the individual employee and that no direct right of action exists under § 7-101a for a person who is not an employee or officer of a municipality such as the plaintiff. The plaintiff insists she has alleged sufficient statutory causes of action.
"A plaintiff bringing suit under General Statutes § 7-465 first must allege in a separate count and prove the employee's duty to the individual injured and the breach thereof. Only then may the plaintiff go on to allege and prove the town's liability by indemnification. . . . This is a personal liability requirement that calls for an inquiry independent of the statute itself, an inquiry into the factual matter of individual negligence. . . .Thus, in a suit under § 7-465, any municipal liability which may attach is predicated on prior findings of individual negligence on the part of the employee and the municipality's employment relationship with that individual." (Citations omitted; emphasis in original; internal quotation marks omitted.) Wu v.Fairfield, 204 Conn. 435, 438, 528 A.2d 364 (1987). "While § 7-465
provides an indemnity to a municipal employee from his municipal employer in the event the former suffers a judgment. . . .[t]he municipality's liability is derivative." (Citations omitted; internal quotation marks CT Page 104 omitted.) Kaye v. Manchester, 20 Conn. App. 439, 443-44, 568 A.2d 459
(1990). See also Lecy v. City of New London, Superior Court, judicial district of New London at New London, Docket No. 549544 (May 2, 2000,Corradino, J.) (26 Conn.L.Rptr. 607); Elinsky v. Marlene, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 557659 (October 31, 1997, Hale, J.T.R.); Iulo v. City of Milford, Superior Court, judicial district of Ansonial/Milford at Milford, Docket No. 031055 (December 21, 1990) (Fuller, J.) (3 Conn.L.Rptr. 65).
Section 7-465 of the General Statutes explicitly provides for an action against the municipality and its employee jointly.[14] "[T]he provisions of § 7-465 which permit an action to be maintained against the municipality and the employee jointly do not mean that a plaintiff may not proceed against the employee alone if for any reason the plaintiff cannot prevail upon the count alleging facts to support a recovery from the municipality of any judgment obtained against the employee. Fraser v. Henninger, 173 Conn. 52, 57, 376 A.2d 406 (1977); see also Rowe v. Godou, 209 Conn. 273, 278-79, 550 A.2d 1073 (1988).
"Section 7-101a(a) requires a municipality to indemnify any municipal officer or full-time municipal employee for any financial loss resulting out of claims of negligence on the part of such officer or employee while acting in discharge of his duties. The City's liability under this statute is also limited to indemnification." Iulo v. City of Milford, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 031055 (December 21, 1990, Fuller, J.). The title of § 7-101a
makes clear that it is designed for the "[p]rotection of municipal officers and municipal employees from damage suits . . . "General Statutes § 7-101a. Thus, § 7-101a is very meaningful to the class of people sought to be protected — employees and officers of municipalities towns and cities. "Section § 7-101a was not passed togive a direct cause of action to anyone else." (Emphasis added.) Parsonsv. West Hartford Board of Education, Superior Court, judicial district of Hartford, Docket No. 533484 (September 16, 1994, Corradino, J.) (13 Conn.L.Rtpr. 52).
In light of the above, this court finds that counts three, four and six of the plaintiff's revised complaint sufficiently allege causes of action in compliance with the requirements of § 7-465. Counts three, four and six are derived from valid underlying claims against the individual defendants as these counts are premised upon counts one, two and five, respectively. "Having found that the individual defendants are not shielded by the doctrine of governmental immunity, and for that reason, having denied the defendants' motion to strike counts [one, two, and five,] the court further finds that the motion to strike the indemnity counts [premised upon such counts] should be and is therefore denied." CT Page 105LaChance v. City of Waterbury, Superior Court, judicial district of Waterbury, Docket No. 148936 (February 29, 2000, Doherty, J.). Stated differently, since the underlying claims against the individual defendants in counts one, two and five were sustained by virtue of the identifiable person-imminent harm exception, and since the indemnification sought in counts three, four and six under § 7-465 is derived from those claims, counts three, four and six sufficiently allege causes of action under § 7-465. Accordingly, the defendants' motion to strike counts three, four and six of the plaintiff's revised complaint is hereby denied.
However, since count eight's underlying claim is based on the stricken constitutional cause of action asserted in count seven, and since the indemnification sought in count eight under § 7-465 is to be derived "from that stricken count, such cause of action is unsupported and fails to state a claim upon which relief may be granted. Moreover, the plaintiff cannot advance count eight as a direct cause of action against the Town of Greenwich under § 7-101a. Accordingly, the defendants' motion to strike count eight of the plaintiff's revised complaint is hereby granted.
Wherefore, for all the reasons discussed above, the defendants' motion to strike counts one, two, three, four, five and six of the plaintiff's revised complaint is hereby denied, and the defendants' motion to strike counts seven and eight of the plaintiff's revised complaint is hereby granted.
D'ANDREA, J.