PAMELA SESTITO, ADMINISTRATRIX (ESTATE OF DOMINICK SESTITO) *v.* CITY OF GROTON ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, SPEZIALE and PETERS, Js.

Argued April 11—decision released July 31, 1979

*Gilbert Shasha,* for the appellant (plaintiff).

*Jon S. Berk,* for the appellees (defendant town of Groton et al.).

SPEZIALE, J.   The plaintiff, Pamela Sestito, as administratrix of the estate of Dominick Sestito (hereinafter decedent), brought this action against the city and the town of Groton[1] (hereinafter town) and Edward H. Fontaine, a policeman employed by the town, to recover damages for her decedent's death during an alleged public disturbance at which the defendant Fontaine was a patrolling officer.  The plaintiff's action was brought in three counts.  The first was directed against the town of Groton under General Statutes § 7-108.  The second count

---

[1] The plaintiff withdrew the action as to the city of Groton, leaving the town as one of the two defendants.

was directed against Fontaine. The third count, which was ancillary to the second count, sought damages from the town by indemnification of the defendant Fontaine under General Statutes § 7-465. At the close of the testimony before a jury, the defendants moved for and were granted a directed verdict on each of the three counts. The plaintiff's motion to set aside the verdict was denied, and from this decision she has appealed.

Directed verdicts are not generally favored. A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. *Pinto* v. *Spigner*, 163 Conn. 191, 192–93, 302 A.2d 266 (1972); *Console* v. *Nickou*, 156 Conn. 268, 270, 240 A.2d 895 (1968); *Santor* v. *Balnis*, 151 Conn. 434, 435, 199 A.2d 2 (1964). In reviewing the trial court's decision directing a verdict and denying a subsequent motion to set it aside, this court considers all the evidence, including reasonable inferences, in the light most favorable to the plaintiff. *Pinto* v. *Spigner*, supra; *Leary* v. *Johnson*, 159 Conn. 101, 104, 267 A.2d 658 (1970).

Considering the evidence in the light most favorable to the plaintiff, the jury reasonably could have found the following facts: On November 22, 1973, at about 1 a.m., Edward H. Fontaine, a supernumerary police officer employed by the defendant town, was patrolling in the area of the Ground Round Restaurant and Bar on Long Hill Road in Groton. He was driving a Groton police car. Fontaine observed a group of at least seven men, including the decedent, in the parking lot adjacent to the restaurant. They had been drinking in the bar for a number of hours. Two members of the group were drinking beer from glasses and another had a pitcher

of beer that he had brought from the bar. Fontaine believed that one member of the group might be armed and a robbery suspect. The area was well lighted and afforded a clear view of the group.

Fontaine drove west on Long Hill Road by the restaurant. He then turned around and drove east, past the restaurant, and still observed the group in the parking lot. He entered an adjacent parking lot, losing sight of the group of men for about two minutes. He saw them again as he drove through the restaurant lot, at which time two more men came out of the bar. An argument started between the decedent and one of the two men who had just joined the group. As Fontaine drove past the group, loud arguing and shoving was occurring. As he drew parallel to the group, he observed four men scuffling and punching, but he did not stop.

Fontaine drove across Long Hill Road and was making a U-turn to park in the lot across from the restaurant, when he heard gunshots. He then called the police station but received no instructions; according to the police records this was the only call received from Fontaine during the period in question. He testified at trial, "It was a melee, everybody was running in every direction." He admitted he could have driven unimpeded into the lot. Instead, he waited until the decedent was shot by one of the other men, and then drove over and arrested the assailant. The decedent died of the gunshot wounds at 6:58 a.m. that day.

The plaintiff sued the defendants under two statutes, General Statutes §§ 7-108 and 7-465. We conclude that there was evidence which could have led the jury reasonably and legally to find the defend-

ants liable under either or both statutes; and, therefore, the trial court was wrong in directing a verdict in favor of the defendants.

## I

The first count of the plaintiff's complaint alleged that the defendant town was liable under General Statutes § 7-108[2] for her decedent's death. In order to recover damages under this statute, a plaintiff must prove that the defendant town owed a duty of reasonable care or diligence as prescribed in the statute, and breached that duty, thereby causing injury compensable by damages. General Statutes § 7-108 is a legislative waiver of sovereign immunity, and therefore must be construed narrowly. *Spring* v. *Constantino*, 168 Conn. 563, 570–71, 362 A.2d 871 (1975); 2A Sutherland, Statutory Construction (4th Ed.) § 58.04. Even strictly read, however, a jury reasonably could have found facts sufficient to assign liability for the decedent's death to the town under General Statutes § 7-108.

The first question regarding this count is whether the group and its actions in the parking lot constituted a "mob, riotous assembly or assembly of persons engaged in disturbing the public peace," and, if so, whether the town's failure to protect the decedent comes within the purview of the statute.

---

[2] General Statutes § 7-108 reads in relevant part:

"Each city and borough shall be liable for all injuries to person or property, including injuries causing death, when such injuries are caused by an act of violence of any person or persons while a member of, or acting in concert with, any mob, riotous assembly or assembly of persons engaged in disturbing the public peace, if such city or borough, or the police or other proper authorities thereof, have not exercised reasonable care or diligence in the prevention or suppression of such mob, riotous assembly or assembly engaged in disturbing the public peace."

In interpreting General Statutes § 7-108, we must first look to the language of the statute. The language of the statute itself is a clear indication of the legislature's intent regarding the issue on this appeal, i.e., the sufficiency of evidence for submission to the jury. Therefore, the legislative history and policy of the statute need not be considered. *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978); *Houston* v. *Warden,* 169 Conn. 247, 251, 363 A.2d 121 (1975).

The assemblage in this case comes within the term "mob, riotous assembly *or* assembly engaged in disturbing the public peace." (Emphasis added.) General Statutes § 7-108. The use of the disjunctive "or" in the statute clearly indicates that the legislature intended the parts of the statute to be separate and not cumulative. *State* v. *Blyden,* 165 Conn. 522, 527, 338 A.2d 484 (1973); *Bahre* v. *Hogbloom,* 162 Conn. 549, 557, 295 A.2d 547 (1972). Therefore, if the activity outside the restaurant reasonably could fit *one* of the three categories in the statute, there is a question of fact for the jury. The term "mob" contemplates a violent assemblage of people defying the law; a "riot" is defined to mean a disturbance of the peace by three or more people who execute an act, legal or illegal, in a violent and turbulent manner. Black, Law Dictionary (Rev. 4th Ed. 1968). An "assembly engaged in disturbing the public peace," however, is a comparatively milder occurrence not necessarily requiring the mutual activity of three or more persons. See Black, op. cit. At the very least, the activity of the group in the restaurant parking lot could have been found to have constituted a disturbance of the peace. Whether in fact it did is an inquiry properly left to the jury.

Also, the question of the defendant town's negligence under the statute should have been submitted to the jury. A question of negligence is ordinarily one of fact. *Busko* v. *DeFilippo,* 162 Conn. 462, 466–67, 294 A.2d 510 (1972); *Palombizio* v. *Murphy,* 146 Conn. 352, 358, 150 A.2d 825 (1959). Only when there are no reasonable differences of opinion may a verdict be directed. While the town has asserted facts in its brief sufficient to exonerate it from liability, including allegations of contributory negligence by the decedent, the evidence presented by the plaintiff conflicts in content and emphasis with the town's assertions. The plaintiff's version could reasonably have been believed by the jury so that they could find liability on the part of the town. See *Pinto* v. *Spigner,* 163 Conn. 191, 195, 302 A.2d 266 (1972). The town's police officer is clearly designated in the statute as an arm of the municipality. The plaintiff alleged that Fontaine was aware of a disturbance of some proportions and did not immediately attempt to stop it; nor did he try to intervene when the opportunity to do so existed. These facts, if believed by the jury, could have supported a finding of negligence on the town's part.

On count one, then, there was sufficient evidence adduced at trial to warrant submission to the jury.

## II

In count two, the plaintiff alleged that Fontaine caused injury to her decedent. In count three, she alleged that the town, under General Statutes § 7-465,[3] was liable for the injury caused by its

---

[3] General Statutes § 7-465, in relevant part, reads:

"ASSUMPTION OF LIABILITY FOR DAMAGE CAUSED BY EMPLOYEES. JOINT LIABILITY OF TOWNS IN DISTRICT DEPARTMENT OF HEALTH. (a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of

employee Fontaine. The statute indemnifies municipal employees who, acting in the scope of their employment, become obligated to pay damages for injury to person or property. A plaintiff bringing suit under General Statutes § 7-465 first must allege in a separate count and prove the *employee's* duty to the individual injured and the breach thereof. Only then may the plaintiff go on to allege and prove the town's liability by indemnification. *Fraser* v. *Henninger,* 173 Conn. 52, 56–57, 376 A.2d 406 (1977); *Kostyal* v. *Cass,* 163 Conn. 92, 97, 302 A.2d 121 (1972); *Martyn* v. *Donlin,* 148 Conn. 27, 32, 166 A.2d 856 (1961).

The facts presented provide sufficient basis to send the question of Fontaine's liability, and hence of the town's liability, to the jury. General Statutes § 7-465, like other statutes holding the sovereign liable for the negligent acts of public officials, requires as a threshold matter that the official involved owe a duty to the individual plaintiff, not just to the public in general. *Stiebitz* v. *Mahoney,* 144 Conn. 443, 446–47, 134 A.2d 71 (1957); *Leger* v. *Kelley,* 142 Conn. 585, 589–91, 116 A.2d 429 (1955); 2 Cooley, Torts (4th Ed.) § 300. Section 7-465, by its terms, requires the breach of an individual duty, i.e., "liability imposed . . . by law for . . . physical damages to person or property . . . ."

---

any employee of such municipality, except firemen covered under the provisions of section 7-308, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty."

This is a personal liability requirement that calls for an inquiry independent of the statute itself, an inquiry into the factual matter of individual negligence. The question in each case is whether the facts present a situation where the statute applies, that is, whether a public official's constant general duty to the public has, in addition, subsumed a specific duty to the individual claiming injury. 2 Cooley, op. cit. It is this factual inquiry that should be left for jury determination, whether the alleged duty to the individual arises from other statutes, regulations, or the common law.

In this case, there was conflicting testimony concerning the actions of the defendant Fontaine in relation to the altercation and shooting. The facts in this case indicate that it should have been submitted to the jury, because there was a sufficient controversy over whether the defendant Fontaine owed a duty to the plaintiff's decedent and breached it. Even as a matter of common law negligence, it is conceivable that Fontaine had a duty to the decedent to act as a skilled policeman under the circumstances, and breached this duty. Because the jury also could have found that the defendant Fontaine was acting within the scope of his employment, the town could have been found liable under General Statutes § 7-465. Thus, counts two and three also should have been submitted to the jury.

This is not the exceptional case where a directed verdict was appropriate. *Gosselin* v. *Perry,* 166 Conn. 152, 167–68, 348 A.2d 623 (1974); Maltbie, Conn. App. Proc. § 202. " 'Litigants have a constitutional right to have issues of fact decided by the jury. *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352.' *Blados* v. *Blados,* 151 Conn. 391, 396, 198

A.2d 213; see *Leary* v. *Johnson,* [159 Conn. 101, 106, 267 A.2d 658]; *Rickert* v. *Fraser,* 152 Conn. 678, 681, 211 A.2d 702." *Pinto* v. *Spigner,* 163 Conn. 191, 198, 302 A.2d 266 (1972). This case presents just the type of conflicting evidence which warrants full consideration by a jury. See *Santor* v. *Balnis,* 151 Conn. 434, 437, 199 A.2d 2 (1964).

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.