[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These three companion cases arise out of a motor vehicle collision which occurred off Route 34 in Newtown on January 9, 1993. The plaintiff Elaine Gatling's decedents, Reginald Nealy and Wayne Burdette, and the plaintiffs Quinton Nealy and Karon Nealy were all passengers in a car driven by Alford Nealy, Jr. Alford Nealy, Jr., Reginald Nealy and Wayne Burdette all were killed when the vehicle left the road and struck a tree at a high rate of speed. Quinton Nealy and Karon Nealy suffered serious injuries in the collision. Autopsy results showed that the alcohol content of Alford Nealy, Jr.'s blood exceeded twice the legal limit.
Approximately one hour prior to the accident, the Nealy vehicle had been stopped by two state troopers on Route 8 in Naugatuck for speeding. Radar clocked the car at 82 miles per hour in a 55 mile per hour zone. When one of the troopers followed the vehicle with lights flashing and siren activated, the car swerved and almost struck a jersey barrier in the median. The troopers questioned the driver and all four passengers and ran wanted persons checks on all five. The troopers also inspected the car and found two empty beer cans. The troopers did not administer roadside sobriety tests nor did they arrest the operator for driving under the influence of liquor. The plaintiffs bring these actions against the State of Connecticut contending that the troopers were negligent in failing to recognize that Alford Nealy, Jr. was operating his vehicle under the influence of liquor and in allowing him to continue to drive CT Page 8565 his vehicle when they knew or should have known that he was intoxicated.
The defendant State of Connecticut has moved for summary judgment, contending: (1) that there is no genuine issue of material fact; (2) that this state does not recognize a cause of action for "negligent investigation" in a professional police malpractice content; and (3) that the state is therefore entitled to judgment as a matter of law. In support of its motion, the state has submitted a certified transcript of certain testimony before the State Claims Commissioner, who gave permission for these suits to be filed, and an affidavit from one of the two state troopers whose actions are at issue. The plaintiffs oppose the state's motion and have submitted a certified transcript of the testimony of Dr. James O'Brien, a toxicologist, which was also taken before the State Claims Commissioner.
A motion for summary judgment "is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279
(1989). "[S]ummary judgment procedure is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 375 (1969). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Millerv. United Technologies Corp., 233 Conn. 732, 751 (1995). "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Internal quotation marks omitted.) Id., 752. "[A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." Id.
Issues of negligence ordinarily are not susceptible of summary adjudication, but should be resolved by trial in the regular fashion. Fogarty v. Rashaw, 193 Conn. 442, 446 (1984). Summary judgment is particularly "ill-adapted to negligence cases, where, as here, the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation. . . ." (Citations omitted; internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 42 Conn. App. 563,568 (1996), cert. granted 240 Conn. 915 (1997). " A CT Page 8566 determination of negligence is necessarily one of fact." Id., 568-69.
In its motion, the state contends that the plaintiffs in these cases are making a claim of "negligent investigation." The allegations of the complaints, however, belie the state's contention. Each complaint alleges that the plaintiff's losses and injuries were caused by the "negligence or carelessness" of the two state troopers in certain stated respects. None of the specifications of negligence refers to a deficient investigation by the troopers. Instead, the complaints allege a failure to recognize that Alford Nealy, Jr. was intoxicated, a failure to enforce state statutes relating to driving while under the influence of liquor, negligence in allowing Nealy to continue to drive, and similar very specific allegations.
A negligence action against a state or local governmental entity cannot be predicated on the breach of a general duty owed to the public. Sestito v. Groton, 178 Conn. 520, 527 (1979). Instead, to maintain an action that a police department's general duty "precipitates into a special one to prevent harm to an individual, the law requires . . . a showing of harm to anidentifiable victim." (Emphasis added.) Shore v. Stonington,187 Conn. 147, 156 (1982). Such a special duty arises only in situations "where it would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm." Id., 153. The allegations of the complaints in these actions fairly set forth a cause of action consistent with the precedent established by Sestito and Shore.
In Sestito the trial judge directed a verdict for the town and the Supreme Court reversed the judgment on appeal, declaring that a question of negligence is ordinarily one of fact and should have been submitted to the jury. Sestito v. Groton, supra,178 Conn. 526. Shore was resolved by summary judgment, which was upheld on appeal. The plaintiff's decedent in Shore died from a collision with a vehicle driven by a drunk driver, Mark Cugini. A town police officer had stopped Cugini about an hour prior to the collision, after the officer noticed some erratic driving at a high rate of speed. The officer spoke with Cugini and admonished him, but did not take him into custody, believing that he would permit his girlfriend to drive after the stop. Thereafter, Cugini continued to drive, causing the death of the plaintiff's decedent, a driver who was unknown to the police officer or Cugini. The Supreme Court distinguished Sestito and upheld CT Page 8567 summary judgment because the facts did not show that the officer could have been aware that the driver's conduct threatened an identifiable victim with imminent harm. Shore v. Stonington,
supra, 187 Conn. 154. The case turned on the undisputed fact that the victim was not identifiable to the police officer who made the stop.
The cases before this court satisfy this threshold requirement of an identifiable victim. The plaintiffs were all identified by name to the two state troopers (who ran wanted persons checks on them) and they were all passengers in the vehicle driven by Alford Nealy, Jr. At the time the troopers stopped the car, the plaintiffs clearly faced imminent harm if Nealy was intoxicated and permitted to continue to drive.
Despite the fact that the plaintiffs were identifiable victims, a genuine issue of material fact is raised by the submissions of both the plaintiffs and the state: whether the troopers recognized or should have recognized that Alford Nealy, Jr. was operating a motor vehicle while under the influence of liquor. The affidavit submitted by the state describes all of the actions taken by the troopers with reference to their stop of the Nealy car, beginning with the use of the radar gun to clock its speed. It states that nothing in the conduct of Alford Nealy, Jr. during the stop gave the troopers reason to suspect that he might be under the influence of alcohol.
The testimony of Dr. O'Brien, submitted by the plaintiffs, sets forth that Alford Nealy, Jr.'s blood alcohol content was .24 at the time of the collision and at the time of autopsy. Dr. O'Brien testified that in his opinion Nealy's blood alcohol content at the time he was stopped by the troopers would have been .258, that the odor of an alcoholic beverage would have been detectable on his breath, that he would have shown indicia of intoxication such as red eyes, clumsiness, unsteadiness, slowness and possibly sedation. Expert testimony may be considered by the court in ruling on a motion for summary judgment. Barrett v. Danbury Hospital, 232 Conn. 242, 251-2
(1995).
Clearly, Dr. O'Brien's testimony contradicts the assertions in the affidavit of the state trooper, demonstrating that there are genuine issues of material fact as to the condition of Alford Nealy, Jr. when stopped by the state troopers in the early a.m. of January 9, 1993 and whether the troopers recognized or should have recognized that he was under the influence of liquor at that CT Page 8568 time. The trier of fact could reach either conclusion: that the troopers recognized or should have recognized that Alford Nealy, Jr. was intoxicated or that they did not and should not have recognized that he was intoxicated. The state's motions for summary judgment in these files therefore are denied.
VERTEFEUILLE, J.