[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: Motion for Judment Notwithstanding the Verdict or to Set Aside Verdict: Motion to Set Aside Verdict as Excessive: Motion for Remittitur: and Motion for Collateral Source Reduction
This case was tried to conclusion before a jury and on July 27, 2000, there was a plaintiff's verdict in the amount of $208,005.75. The defendant, Maurice Roddy, the former Commissioner of Public Works for the town of Greenwich, filed the following post-verdict motions: (1) for judgment notwithstanding the verdict, or, in the alternative, to set aside the verdict and for a new trial; (2) to set aside the verdict on the ground that it is excessive; and (3) for remittitur. Additionally, on August 11, 2000, the defendant filed: (4) a motion for collateral source reduction.
Some discussion of the factual and procedural history of the case is necessary. In this common law negligence action, the plaintiff claimed that she suffered injuries as a result of the negligence of the defendant[1] when she tripped and fell on a defective sidewalk in Greenwich on April 19, 1995. The plaintiff alleged that the defendant, then Commissioner of Public Works for the town of Greenwich, was negligent in that the employees in his department, prior to the incident, negligently performed excavation and repair work to the area in which the plaintiff fell in the following ways: they negligently filled and paved an area of property without legal authority to do so in that they filled, paved and repaired the area so as to be unevenly graded and created a curb with lower than minimum height requirements, thereby CT Page 3666 creating a tripping hazard; they failed to make an inspection of the repaired area; they failed to warn the plaintiff of the aforesaid condition; and they failed to use reasonable care in the filling, paving and repairing of said property. The plaintiff claimed that as a result of the negligence of the defendant, she suffered severe, substantial, and debilitating injuries.[2] The plaintiff also claimed she endured physical pain and suffering as well as mental anguish and nervousness, and that some of these injuries were permanent in nature. The plaintiff further claimed that she has incurred, and would incur in the future, expenses for medical care.
The defendant, in turn, asserted special defenses, two of which are relevant to the motions presently before the court: first, that the plaintiff was guilty of negligence which was a substantial factor in causing her injuries in that she failed to watch where she was walking and failed to make reasonable and proper use of her senses and faculties to observe the conditions then and there existing; and second, that the defendant, as a public employee, was engaged in the good faith performance of discretionary governmental acts or duties and therefore, is immune from negligence liability.
As previously noted, the case was tried before a jury and the jury returned a plaintiff's verdict in the amount of $208,005.75. The jury first assessed the plaintiff's total damages to be $277,341.00. After factoring in its finding of the plaintiff's 25% comparative negligence, however, the jury ultimately awarded the plaintiff's verdict in the sum of $208,005.75.
Pursuant to Practice Book §§ 16-35[3] and 16-37,[4] the defendant moves to set aside the verdict and for a judgment notwithstanding the verdict to be entered in his favor, on the grounds that the defense of governmental immunity precludes the jury's verdict, the defendant's duty was a public duty and not actionable in negligence, and the "identifiable victim-imminent harm" exception is inapplicable to this case as a matter of law.[5] In the alternative, the defendant moves to set aside the verdict and for the ordering of a new trial on the grounds that the verdict was contrary to law, based in part on an erroneous instruction, against the weight of the evidence and motivated by the improper argument of the plaintiff's counsel.
In opposition, the plaintiff argues that there was sufficient evidence to support the finding of imminent harm to a foreseeable victim, there were no errors in the court's instruction to the jury, that any improper argument of counsel was minimal and cured by the court's instruction, and that the jury's verdict is supported by the weight of the evidence. Furthermore, the plaintiff argues that the jury could have found that the CT Page 3667 doctrine of qualified immunity did not apply to the defendant and that there was a reasonable basis for the jury to find that the plaintiff was less than 51% negligent.
"In determining a motion for judgment notwithstanding the verdict or a motion to set aside the verdict, the court must look to the evidence and view it most favorably to the nonmoving party in determining whether the jury could have reasonably reached the result that it did." Brown v.Dooling, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 032598 (January 23, 1998, Flynn, J.).
The standard for ruling on a motion to set aside a verdict is well established. "The trial court has the inherent power to set aside a jury verdict which, in the court's opinion, is either against the law or the evidence." Hunt v. Prior, 236 Conn. 421, 428 n. 21, 673 A.2d 514 (1996). "A court may set aside a verdict if it determines that the jury misapplied the law as given to them by the court." Jacobs v. Goodspeed,180 Conn. 415, 417, 429 A.2d 915 (1980). "The decision to set aside a verdict involves the exercise of a broad discretion in the trial court. . . . Litigants, however, have a constitutional right to have the jury and not the court decide issues of fact as to which reasonable people may reach different conclusions. . . . Thus, the role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did. . . . Accordingly, [the trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality." (Brackets in original; citations omitted; internal quotation marks omitted.) Hunt v. Prior, supra,236 Conn. 428 n. 21.
In deciding whether an action is barred by the doctrine of governmental immunity, "the court looks to see whether there is a public or private duty alleged by the plaintiff." Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988). "[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance must be a public and not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it CT Page 3668 properly, is an individual wrong and may support an individual action for damages." (Internal quotation marks omitted.) Id., 166. "If a public duty exists, an official can be liable only if the act complained of is a ministerial act, or one of the narrow exceptions to discretionary acts applies."[6] Id., 170.
"[A]lthough the public duty doctrine provides the starting point of the analysis, distinctions between discretionary acts and ministerial actsare often controlling without regard to whether the duty is ascertainedto be public or private." (Emphasis added.) Gordon v. Bridgeport HousingAuthority, supra, 208 Conn. 170. In outlining the scope of governmental immunity, the Connecticut Supreme Court has stated that "municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion."Elliot v. Waterbury, 245 Conn. 385, 411, 715 A.2d 27 (1998). "[A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." (Internal quotation marks omitted.) Id. See also Purzycki v. Fairfield, 244 Conn. 101, 107,708 A.2d 937 (1998). "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . [M]inisterial acts are performed in a prescribed manner without the exercise of judgement or discretion. . . ." (Internal quotation marks omitted.) Id. "[W]here the duty of the public official to act . . . involves the exercise of discretion, the negligent failure to act will not subject the public official to liability unless the duty to act is clear and unequivocal." Gordon v. Bridgeport Housing Authority,
supra, 208 Conn. 167.
The courts have recognized three exceptions where an official can be held liable when performing a discretionary act. They are: "first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal officer for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Purzyckiv. Fairfield, supra, 244 Conn. 108.
Whether an official act or omission falls within an exception to governmental immunity is a question for the jury in cases involving disputed facts. Purzycki v. Fairfield, supra, 244 Conn. 107-08. The ultimate determination of whether qualified immunity applies, however, is ordinarily a question of law for the court. Id., 107.
In this case, the court gave a charge to the jury on governmental CT Page 3669 immunity and the distinction between discretionary and ministerial acts. The court also asked the jury to decide whether the "identifiable person-imminent harm" exception applied to the defendant's acts,[7]
because the other exceptions to immunity were neither alleged nor supported by the evidence. The jury concluded that the identifiable person-imminent harm exception applied to the defendant's discretionary acts and exposed him to liability. The jury found that the defendant and his subordinates were engaged in discretionary, not ministerial acts "in performing the removal of [a] planter and excavating and repaving the street." (Jury Interrogatories, #6.) The jury also specifically found that "[i]n performing their discretionary acts of removing the planter and excavating and re-paving the street. . . . the circumstances [were] such that it was apparent to [the defendant] and/or his subordinate employees that the way in [which] they performed their work would be likely to subject an identifiable person, or a narrowly defined identified class of foreseeable victims, to imminent harm." (Jury Interrogatories, #7.)
Notwithstanding the jury's verdict and findings, the defendant argues that the verdict must be set aside and judgment entered for the defendant because the identifiable person-imminent harm exception is inapplicable to this case as a matter of law. The defendant contends that the jury's finding on jury interrogatory #7 was erroneous because the jury could not have reasonably found that the alleged defect in this case created a foreseeably dangerous condition which was limited in duration of time and in geographical scope. The defendant asserts that the plaintiff was not "identifiable," because the evidence indicated that the plaintiff's fall occurred on a public sidewalk or curb that was accessible to the general public, where the plaintiff was voluntarily present, like innumerable other pedestrians. The defendant asserts that the threat of harm to the plaintiff was not "imminent" because the risk of injury to the plaintiff implicated a wide range of factors that could occur, if at all, at some unspecified time in the future. See Evon v. Andrews, 211 Conn. 501, 508,559 A.2d 1131 (1989) (court held that the plaintiffs' decedents were not subject to imminent harm because "the [harm] could have occurred at any future time or not at all.") Moreover, the defendant argues that because the jury found that the plaintiff had been negligent in regard to her duty to protect herself, there was no clear and unequivocal duty owed by the defendant to the plaintiff.
Several decisions of the Supreme Court shed light on the proper application of the identifiable person-imminent harm exception. See, e.g., Purzycki v. Fairfield, supra, 244 Conn. 101; Burns v. Board ofEducation, 228 Conn. 640, 638 A.2d 1 (1994); Evon v. Andrews, supra,211 Conn. 501; Gordon v. Bridgeport Housing Authority, supra,208 Conn. 161; Shore v. Stonington, 187 Conn. 147, 444 A.2d 1379 (1982); CT Page 3670Sestito v. Groton, 178 Conn. 520, 528, 423 A.2d 165 (1979);[8] See alsoColon v. City of New Haven, 60 Conn. App. 178, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000); Bonamico v. Middletown,49 Conn. App. 605, 713 A.2d 1291 (1998).
In Sestito v. Groton, supra, 178 Conn. 520, the plaintiff sought damages for the fatal shooting of her decedent during a public disturbance or melee in which she alleged that the defendant police officer was negligent in watching the disturbance while failing to do anything to prevent it. Viewing the evidence in the light most favorable to the plaintiff, the Sestito court set aside a directed verdict for the defendants, explaining that the facts regarding governmental immunity should go to a jury where there is "sufficient controversy over whether the defendant . . . owed a duty to the plaintiff's decedent and breached it," regardless of whether the alleged duty arises from statutes, regulations, or the common law. Id., 528. The fact that the plaintiff's decedent was one man among a mob of men did not compel the court to conclude that he was an insufficiently identifiable victim.
In Shore v. Stonington, supra, 187 Conn. 147, the plaintiff administrator sought damages from the defendant town for the death of his decedent. The plaintiff's decedent had been killed when her vehicle was struck by another car in which the driver was intoxicated. Approximately one hour before the collision, a town police officer stopped the intoxicated driver and after telling him not to drive, the officer let the driver go. The plaintiff claimed that the officer was negligent in failing to enforce statutory prohibitions concerning reckless and intoxicated driving and that the decedent was an identifiable person subject to imminent harm. The Shore court concluded that the facts presented therein failed to show that the defendant officer could have been aware that the intoxicated driver's conduct threatened an identifiable victim with imminent harm. Id., 153-54. In declining to find that the identifiable victim-imminent harm exception applied, the Shore
court provided the following public policy analysis: "The adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society." (Emphasis added.) Id., 157
In Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 161, the plaintiff, conservatrix of the estate of her brother, an incapable, sought damages from the defendants, a city, a housing authority and its commissioners, a former mayor, and a chief of police, for injuries suffered in a beating at a housing project. The plaintiff's brother allegedly encountered a group of youths and one youth grabbed his wallet and fled into a housing project. Two other youths allegedly lured the plaintiff's brother inside the project on the pretext that they would help CT Page 3671 him recover the wallet, then the youths physically beat him to a condition just short of death. The defendants moved to strike various counts of the plaintiff's complaint on the ground that the defendants owed no duty to protect the plaintiff's brother, by application of the doctrine of governmental immunity. In declining to find that the plaintiff's brother was an identifiable person within a foreseeable class of plaintiffs, the Gordon court emphasized that "[a]ccording to the complaint, the police had no knowledge whatsoever of the robbery of [the plaintiff's brother], who made no attempt to notify the police, and who entered the project on his own. The facts of this case do not support the claim that [the plaintiff's brother] was even a remotely foreseeable plaintiff." Id., 180. In affirming the granting of the defendants' motion to strike, Gordon held that the defendants had no duty to provide police protection to the plaintiff's brother specifically, as distinguished from its duty to the public generally, because the facts alleged were insufficient to support the claim that the plaintiff's brother belonged to a foreseeable class of plaintiffs. Id., 180-182.
In Evon v. Andrews, 211 Conn. 501, the plaintiffs sought damages for the wrongful deaths their decedents who had been killed when fire destroyed an apartment building. The plaintiffs alleged that the defendant city and various officials were negligent in failing to enforce certain statutes, regulations and codes regarding the maintenance of dwellings. On the issue of the imminence of the harm, the Evon court considered that "[t]he risk of fire implicates a wide range of factorsthat can occur, if at all, at some unspecified time in the future." (Emphasis added.) Id., 508. In rejecting the proposition that the plaintiffs' decedents were readily identifiable victims subject to imminent harm, the court stated: . . . . . the fire could have occurredat any future time or not at all." (Emphasis added.) Id.
In Burns v. Board of Education, supra, 228 Conn. 640, the Supreme Court shed light on what type of fact pattern characterizes "imminency" in the context of the exceptions to governmental immunity. In Burns, the plaintiffs sought to recover from the defendants, a city, its board of education and the superintendent of schools when a student fell during school hours on an icy school courtyard. In reaching the conclusion that governmental immunity was not an applicable defense, the court considered such factors as "the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves." (Citations omitted.) Id., 647-48. Regarding the imminency of the harm, the court found critical that "this accident could not have occurred at any time in the future; rather, the danger waslimited to the duration of the temporary icy condition . . . and the CT Page 3672 potential for harm . . . was significant and foreseeable." Id., 650.
In Purzycki v. Fairfield, supra, 244 Conn. 101, another case illustrating the imminence requirement, the plaintiffs sought damages from the defendant school principal and board of education for injuries sustained by a student who was tripped by a fellow classmate in an unsupervised hallway during a lunch recess period. The jury returned a verdict for the plaintiffs, which the trial court set aside, ruling that the plaintiffs had failed to prove their claim that, at the time he sustained the injuries, the plaintiff child was subject to imminent harm. The Appellate Court affirmed the trial court's judgment and the plaintiffs appealed. The Supreme Court held that the trial court abused its discretion in setting aside the jury's verdict, there being sufficient evidence from which the jury reasonably could have found that the plaintiff child was a member of an identifiable class of persons subjected to imminent harm. In finding that the student was subject to imminent harm, the Purzycki court reasoned that the exception to governmental immunity fit the facts of the case since the risk of harm was significant and foreseeable and "involve[d] a limited time period andlimited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess." (Emphasis added.) Id., 110.
The Supreme Court decisions described above make clear that the existence of more than one identifiable victim does not preclude application of the identifiable person-imminent harm exception to immunity for a municipal employee's discretionary acts. See e.g., Sestito v.Groton, supra, 178 Conn. 520 (plaintiff's decedent shot among mob of men considered sufficiently identifiable victim for purposes of governmental immunity exception); Burns v. Board of Education, supra, 228 Conn. 646
("We have construed [the identifiable person-imminent harm] exception to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims."). The decisions also make clear, however, that in order to be an identifiable or foreseeable victim, there must be some basis upon which the defendant could have distinguished the plaintiff from other members of the general public. See e.g., Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 161; Shorev. Stonington, supra, 187 Conn. 147. Furthermore, the decisions reveal that the test for the imminent harm prong of the exception is whether there was "a foreseeably dangerous condition that was limited in duration and geographical scope." Purzycki v. Fairfield, supra, 244 Conn. 110; see also Burns v. Board of Education, supra, 228 Conn. 647-48.
The evidence at trial regarding the imminence of potential harm was as follows: The plaintiff testified as to the dangerous condition of the CT Page 3673 sidewalk as it had been left following the removal of the planter by the defendant. The plaintiff testified that it was difficult to appreciate the height differential between the curb and the asphalt and the unevenness of the sidewalk where she was injured. Photographs were also entered into evidence depicting this condition. The testimony of John Fitzgerald, a professional engineer, indicated that the condition created by the height differential between the asphalt roadway and the concrete sidewalk at the subject property, as well as the unevenness of the edge of that sidewalk, created a dangerous tripping hazard. This evidence suggests that there was a likelihood that harm would result from the defendant's failure to act with reasonable care and also supports a reasonable finding that the condition posed a threat of serious injury.
The evidence produced at trial does not, however, support a finding that this condition was limited in duration. The plaintiff testified that while two concrete blocks comprised the sidewalk surrounding the property where the plaintiff was injured, the sidewalk narrowed to one concrete block at the actual situs of the plaintiff's fall. The plaintiff further testified that at that narrowed juncture, there was an asphalt continuation of the walkway which effectively directed pedestrians such as the plaintiff onto the road. Finally, the plaintiff testified that no cars were parked on the road immediately adjacent to the site where the plaintiff was injured, although automobiles were parallel parked on the section of the road immediately north of that site, which required the plaintiff to step back up from the road onto the adjacent sidewalk. The plaintiff now argues her testimony supports a finding that the tripping hazard was limited in duration since the potential for harm was manifest only when parking patterns existed in this arrangement.
This court finds that the physical condition of the curb cannot reasonably be considered temporary or limited in duration. The height differential between the curb and the asphalt is a continuous condition, regardless of surrounding parking patterns. Thus, the duration of the threat of injury posed by the curb is unspecified rather than imminent. The tripping hazard in this case, like the risk of fire at issue in theEvon case, "implicates a wide range of factors that can occur, if at all, at some unspecified time in the future" as the plaintiff's fall "could have occurred at any future time or not at all." See Evon v.Andrews, supra, 211 Conn. 508.
Next, this court must determine whether the jury had a reasonable basis for finding that the plaintiff was an identifiable person, or a member of a narrowly defined class of foreseeable victims, for purposes of the identifiable person-imminent harm exception. The defendant cites to Romanv. Stamford, 16 Conn. App. 213, 547 A.2d 97 (1988), aff'd, 211 Conn. 396,559 A.2d 710 (1989), a case involving the duty owed by a municipality to CT Page 3674 maintain its trees, and argues that the duty involved in the present case, similarly, "was not of such a nature that its performance would likely affect any passengers on city roads in a manner different in kind from the way it affects the public at large." Id., 220 (setting aside jury verdict entered for plaintiff and directing trial court to render judgment for defendant city). The defendant also cites to Superior Court decisions which have declined to apply the identifiable person-imminent harm exception in cases involving injuries on public highways, employing the rationale that a person injured on such a highway is only one among many unidentifiable persons who may encounter the alleged defect. SeeDunbar v. City of Stamford, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 310727, (May 5, 1994, Fuller, J.) (11 Conn.L.Rptr. 448) (holding that failure to replace or install stop sign at intersection is discretionary governmental function and does not constitute condition of imminent harm to identifiable victim in negligence action against commissioner of public works); Sousa v. Town ofBrookfield, Superior Court, judicial district of Danbury, Docket No. 307588 (May 27, 1992, Fuller, J.) (6 Conn.L.Rptr. 468) (same). Finally, the defendant relies on a case in which the identifiable person-imminent harm exception was held inapplicable against municipal employee defendants because the plaintiff was neither an identifiable victim nor within a narrowly defined class of foreseeable victims.Metcalf v. Town of Watertown, Superior Court, judicial district of Waterbury, Docket No. 140643 (December 14, 1999, Doherty, J.) (plaintiff injured while skating at skating rink open to public was not identifiable victim to municipal defendants because "the class of possible victims at a skating rink is unspecified. Anyone could be skated into at any time.")
The plaintiff, in turn, argues that she was identifiable because "not everyone . . . was required to step up onto the adjacent sidewalk. It was the peculiar and temporary circumstances of her case that required her to step up onto the adjacent sidewalk." The plaintiff asserts that the facts involved in the Superior Court cases cited by the defendant are distinguishable from the facts of present case[9] and concludes that she was a foreseeable victim[10] distinct from the general public.
An application of the criteria outlined by the Supreme Court to the present case makes clear that the jury could not have reasonably found that circumstances made it apparent to the defendant that his acts were likely to subject an identifiable person to imminent harm.[11] The evidence produced at trial does not provide a reasonable basis from which the jury could have found that the plaintiff was an "identifiable" person, as distinguished from members of the general public. First, unlike a plaintiff located within an unruly mob, the plaintiff in the present case was not a readily identifiable victim. See Sestito v. Groton,
CT Page 3675 supra, 178 Conn. 520. Second, similarly to the plaintiff injured by a driver known to be intoxicated by the municipal defendants in the Shore
case, the plaintiff in the present case was not a readily identifiable victim. See Shore v. Stonington, supra, 187 Conn. 147. Third, a class of plaintiff's which may include anyone who may at any time travel upon the area of uneven sidewalk where the plaintiff was injured, is not the sort of "narrowly defined identifiable class of foreseeable victims" needed to trigger the exception. Burns v. Board of Education, supra, 228 Conn. 646. In order for the identifiable person-imminent harm exception to apply, both prongs of the exception must be satisfied and therefore, the jury's verdict for the plaintiff must be set aside as a matter of law.
Based on the foregoing, the court concludes that there is no reasonable basis — in law or fact — for finding that the condition in which the defendant left the sidewalk after removing the planter subjected the plaintiff and/or a foreseeable class of persons to the threat of imminent harm. Accordingly, the defendant's motion to set aside the jury's verdict and for judgment notwithstanding the verdict is hereby granted.[12] Consequently, the court finds that it need not reach any other arguments asserted in the defendant's panoply of post-trial motions or in the plaintiff's opposition papers. The court need not address the defendant's additional motions to set aside the verdict on the ground that it is excessive, for remittitur, or for collateral source reduction.
In summary, for all the reasons set forth above, the court grants the defendant's motion to set aside the verdict and for judgment notwithstanding the verdict in accordance with his motion for a directed verdict.
So Ordered.
D'ANDREA, J.