******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., concurring. I concur in the judgment, under the unusual circumstance existing in this case, remanding this case to the trial court for a new trial. I write separately, however, to express my concern that our law surrounding the identifiable person, imminent harm exception to municipal immunity is, to put it mildly, less than clear. I agree with the majority that it is necessary to partially overrule our reasoning in *Burns* v. *Board of Education*, 228 Conn. 640, 649, 638 A.2d 1 (1994), and *Purzycki* v. *Fairfield*, 244 Conn. 101, 106–10, 708 A.2d 937 (1998).[1] Nevertheless, I would conclude that in doing so, this court has knocked over a large storefront in the Potemkin village that is our jurisprudence in this area. I agree with the majority that a reasonable juror could find that "the ongoing problem of horseplay in the locker room and the presence of the broken locker were so likely to cause an injury to a student that the officials had a clear and unequivocal duty to act immediately to prevent the harm . . . ." I similarly agree with the majority that whether an action or circumstance qualifies as an "imminent harm" should not be determined by looking at whether the risk of harm was temporary. I write separately because, as a result of this decision, I cannot now parse any meaningful distinction between the cases in which this court has held that a jury reasonably could conclude that this exception to immunity should apply, and cases in which this court has rejected its potential application as a matter of law. Further, I am not sure that the new definition for "imminent harm" will fully clarify the distinction drawn in the previous cases.

In order to explain my reasoning, I look first to the case that heralded the creation of this exception, *Sestito* v. *Groton*, 178 Conn. 520, 423 A.2d 165 (1979). In *Sestito*, the plaintiff was the administratrix of the estate of the decedent, a man who had been shot and killed following an altercation outside of a bar in Groton. Id., 521–23. While the altercation that led to the decedent's death, which started out as a brawl between at least four men, was occurring, a municipal police officer was patrolling the relevant area in a police car. Id., 522–23. As the officer continued to drive around the area, he observed a group of seven men, including the decedent, gathering in the parking lot outside of a restaurant. Id. He then observed two other men exit the bar and join the group, one of whom began to argue with the decedent. Id., 523. As the officer continued to drive, he observed the argument devolve into a physical fight. Id. The officer did not approach, but instead proceeded to park his vehicle in a parking lot across from the restaurant. Id. While parking his vehicle, he heard gunshots. Id. The officer notified the police station but, receiving no further instructions, stayed in the lot across from the res-

taurant. Id. As the officer testified at trial, over at the restaurant, " '[i]t was a melee, everybody was running in every direction.' " Id. The officer "admitted [that] he could have driven unimpeded into the lot [where the altercation was occurring]. Instead, he waited until the decedent was shot by one of the other men, and then drove over and arrested the assailant." Id. This court concluded that, "[t]he facts presented provide sufficient basis to send the question of [the officer's] liability, and hence of the town's liability, to the jury." Id., 527.

Although *Sestito* is recognized as the case that created the identifiable person, imminent harm exception as we know it, this was not expressly recognized by the court until it decided *Shore* v. *Stonington*, 187 Conn. 147, 444 A.2d 1379 (1982). In that case, a municipal police officer had pulled over a driver who was driving erratically. Id., 150–51. Although the facts gave rise to the inference that the driver was intoxicated, the police officer did not arrest the driver, but instead informed him that "if he wanted to keep his driver's license, he had better slow down and should let his girlfriend drive." Id., 150. Approximately one hour later, the driver struck a car being driven by the plaintiff's decedent, which ultimately caused the decedent's death. Id., 150–51. The plaintiff brought an action against the town of Stonington, claiming that its police officer had acted negligently in failing to enforce the motor vehicle laws of the state of Connecticut against the driver who caused the decedent's death. Id., 148–50. The court stated: "There is . . . authority for the proposition that where the duty of the public official to act is not ministerial but instead involves the exercise of discretion, the negligent failure to act will not subject the public official to liability unless the duty to act is clear and unequivocal. . . . We have recognized the existence of such duty in situations where it would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm. See *Sestito* v. *Groton*, [supra, 178 Conn. 528]." (Citation omitted.) *Shore* v. *Stonington*, supra, 153. The court in *Shore* distinguished *Sestito*, noting that the plaintiff could not show that the officer "could have been aware that [the driver's] conduct threatened an identifiable victim with imminent harm." Id., 153–54. The court did not explain its reasoning on this point.

In *Evon* v. *Andrews*, 211 Conn. 501, 502, 559 A.2d 1131 (1989), the next case in which this court considered the application of the identifiable person, imminent harm exception, the court determined that the exception did not apply in a situation where the city of Waterbury had allegedly been negligent in enforcing various laws, regulations, and codes in the maintenance of "rental dwellings." As a result, the plaintiff's claimed, their decedents had perished in a fire that destroyed a multi-family rental unit that "contained numerous conditions that violated state regulations and state and local build-

ing codes . . . ." Id., 505. In deciding that the exception did not apply, the court acknowledged its earlier decisions in *Shore* and *Sestito*, and noted that "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. The class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of 'identifiable persons' within the meaning of [*Shore*]. Furthermore, the plaintiffs' decedents were not subject to 'imminent harm.' This is clearly not the situation in which a police officer stood by and watched a public brawl that resulted in a person being shot. See *Sestito* v. *Groton*, [supra, 178 Conn. 522–23]. The present allegations do not even rise to the level of the imminence we rejected in [*Shore*], in which a police officer permitted a drunk driver to continue on his way, resulting in the death of the plaintiff's decedent. In the present instance, the fire could have occurred at any future time or not at all. We cannot accept the proposition that the plaintiffs' decedents in this case were readily identifiable victims subject to imminent harm." *Evon* v. *Andrews*, supra, 508. Thus, the court in *Evon* concluded independently that, for purposes of the identifiable person, imminent harm exception to municipal liability, (1) the plaintiffs were not identifiable persons and (2) the plaintiffs were not subject to imminent harm. Id.

These aforementioned cases are the precedents that were available to this court at the time that it decided *Burns* v. *Board of Education*, supra, 228 Conn. 640. In that case, "the plaintiff school child slipped and fell due to icy conditions on a main accessway of the school campus, during school hours, while the child was compelled by statute to be on those school grounds." Id., 650. The court distinguished *Evon* by noting that "this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly 'treacherous' area of the campus. Further, the potential for harm from a fall on ice was significant and foreseeable." Id. In my view, this language in *Burns* was clearly aimed at distinguishing *Evon*, in which this court concluded that "the fire could have occurred at any future time or not at all." *Evon* v. *Andrews*, supra, 211 Conn. 508. In *Burns*, this court also decided that, at least in certain contexts, an individual person may be considered an "identifiable person" if he or she falls within a certain class of victim intended to be the beneficiary of the relevant duty of care. See *Burns* v. *Board of Education*, supra, 647–48.

In *Purzycki* v. *Fairfield*, supra, 244 Conn. 101, which was decided several years after *Burns*, the court primarily relied on *Burns*, noting that in that case, "it was critical to our conclusion that governmental immunity was not a defense that 'the danger was limited to the duration of the temporary . . . condition . . . [and

that] the potential for harm . . . was significant and foreseeable.' *Burns* v. *Board of Education*, supra, 228 Conn. 650. Similarly, the present case involves a limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess. Also, it involves a temporary condition, in that the principal testified that every other aspect of the lunch period involved supervision." *Purzycki* v. *Fairfield*, supra, 110.

The majority now concludes that the distinctions that this court has previously drawn with regard to the issue of whether a harm was "imminent" in cases such as *Evon*, *Burns*, and *Purzycki* were artificial, concluding that "the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." While I agree with the majority that it is folly to consider a harm "imminent" only if it is limited by its nature to a certain time and place, in my opinion the majority's solution only throws our jurisprudence regarding this exception into even greater confusion. In the time since *Evon*, *Burns*, and *Purzycki* were decided, this court has reframed the exception into one that contains three distinct elements: "By its own terms, this test [for determining whether discretionary immunity is abrogated by the identifiable person, imminent harm exception] requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to harm." (Internal quotation marks omitted.) *Coley* v. *Hartford*, 312 Conn. 150, 156 n.7, 95 A.3d 480 (2014). In my view, the conclusion adopted by the majority collapses the apparentness and imminent prongs into one, and it does so in a way that only further tangles a doctrine which is already full of snarls.

For example, under this test, the majority observes that "the risk of injury from an unprotected buzz saw in a classroom occupied by roughhousing fifteen year old children would clearly be imminent." See footnote 15 of the majority opinion. This suggests, in my mind, that the majority believes that such a set of circumstances would represent an imminent harm as a matter of law. Yet, it concludes, it is up to a jury to determine whether keeping an unguarded locker with a jagged edge in a room full of roughhousing fifteen year old children presents an imminent harm. I do not see a meaningful distinction between these two situations. For that matter, I do not see how either of these two situations poses more of an imminent harm to an identifiable group of people than does, say, a drunk driver on the highway to others driving on the road, and yet, that is what this court decided in *Shore* v. *Stonington*, supra, 187 Conn. 152–54. Similarly, in a recent decision,

*Edgerton* v. *Clinton*, 311 Conn. 217, 237–39, 86 A.3d 437 (2014), this court implied that the exception did not apply because the plaintiff could not pinpoint the precise moment during an ongoing car chase between civilians where it became apparent to the town's dispatcher that the plaintiff's decedent was in imminent harm, even though the dispatcher testified that she was aware that civilians should never engage in car chases, and even though an expert testified that dispatchers are trained to understand that civilian car chases are inherently dangerous. See also id., 247–51 and n.10 (*Eveleigh, J.*, dissenting). Yet, in the present case, this court concludes that, even though there is no claim that the defendant, the city of Middletown, or any of its employees were aware that, from 9:06 to 9:11 a.m., the named plaintiff's minor son, Jasmon Vereen, was being subjected to imminent harm, such risk of harm should have been apparent to them.

While I agree with this result, I fail to understand the principled distinction that can be made between this set of circumstances and that faced by this court in cases such as *Shore* or *Edgerton*. In my view, the test for determining whether a harm was imminent should be whether it was, or should have been, apparent to the municipal defendant that the dangerous condition was so likely to cause harm in the near future that the defendant had a clear and unequivocal duty to act to prevent the harm. In my view, this test would make it clear that situations such as those presented in *Shore* and *Edgerton* present issues of fact to be decided by the jury.

This test would not present an expansion of liability beyond the bounds of General Statutes § 52-557n. Rather, it would conform with the acts of negligence contained in that statute. Section 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omission of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." Thus, the failure to act when a reasonable person would ordinarily act is covered as part of the exception to municipal immunity. I would therefore incorporate the "should have been" apparent language to the present test proposed by the majority since, in my view, it conforms with the legislative mandate. It further makes it clear that issues such as those raised in *Shore, Evon* and *Edgerton* are best left for a jury determination. For those reasons, I respectfully concur in the judgment of the court.

[1] It is my understanding, as I explain in greater detail subsequently in this opinion, that the majority opinion does not overrule entirely either *Burns* or *Purzycki*, but rather overrules only the treatment given to the definition of "imminent harm" contained in those opinions.